No. <u>22-1051</u>

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

ANDREW KING,

**Appellant,**

Vs.

JASON K. UTT, individually and in his capacity as agent and employee of the City of New Martinsville; FRIEND ESTEP, individually and in his capacity as agent and employee of the City of New Martinsville; and CITY OF NEW MARTINSVILLE, a West Virginia Political Sub-Division

**Appellee.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Appeal From The United States District Court
For The Northern District Of West Virginia
Wheeling Division

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
## PETITION FOR PANEL REHEARING AND/OR REHEARING *EN BANC*
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Louis J. Kroeck IV, Esquire
Pa. I.D. # 210045
LJK LAW, PLLC
1200 Sarah Street
Pittsburgh, PA 15203
Phone: (412) 712-7605
Fax: (717) 820-1052
Email: Lou@ljk-law.com
Attorneys for Appellant

# **TABLE OF CONTENTS:**

**Page #(s):**

TABLE OF AUTHORITIES ..............................................…    -i-

STATEMENT REQUIRED BY F.R.A.P. 40 (B) & 35 (B) .......…...............…    1

INTRODUCTION ……………………………………………………..    1

BACKGROUND ………...............................................……    8

ARGUMENT …………….................................................…    12

    i.   A material factual or legal matter was overlooked in the decision, namely:

        a.    the facts or evidence suggested that no probable cause existed in the arrest of Appellant an innocent individual.

        b.    The panel decision failed to address the critical constitutional questions raised nor the application of Baker by the district court.

   iii.  The opinion is in conflict with a decision of the United States Supreme Court, this Court, or another Circuit court of Appeals.

   iv.  The proceeding involves one or more questions of exceptional importance.

CONCLUSION...............................................................…    17

REQUEST FOR ORAL ARGUMENT ........................................…    18

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ...........................…    19

CERTIFICATE OF SERVICE ...................................................…    20

**TABLE OF AUTHORTIES**

**CASES CITED:**                                                    **Page #(s):**

Armstrong v. Squadrito,
  152 F.3d 564 (7th Cir. 1998)………………………………………...    6, 13

Brooks v. City of Winston-Salem,
  85 F.3d 178 (4th Cir. 1996)………………………………………...    8, 15

Cannon v. Macon Cnty.,
  1 F.3d 1558 (11th Cir. 1993)………………………………………...    6, 13

Coleman v. Frantz,
  754 F.2d 719 (7th Cir. 1985)………………………………………    6

Collins v. City of Harker Heights,
  503 U.S. 115 (1992)………………………………………………...    2

County of Sacramento v. Lewis,
  523 U.S. 833 (1998)………………………………………………...    2, 3

Covenant Media of S.C., L.L.C. v. City of N. Charleston,
  493 F.3d 421 (4th Cir. 2007)……………………………………...    2

Dean ex rel. Harkness v. McKinney,
  976 F.3d 407 (4th Cir. 2020)……………………………………….    2, 3

DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,
  489 U.S. 189 (1989)……………………………………………….    3

Flores v. City of S. Bend,
  997 F.3d 725 (7th Cir. 2021)……………………………………..    6, 13

Gay v. Wall,
  761 F. 2d 175 (4th Cir. 1985)……………………………………..    5, 7, 13

Harlow v. Fitzgerald,
  457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)…………………………    5

Hartman v. Moore,
  547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)………………………    14

Heck v. Humphrey,
  512 U.S. 477 (1994)……………………………………………...    14, 15

Humbert v. Mayor & City Council of Balt. City,
    866 F.3d 546 (4th Cir. 2017)……………………………………………..   3, 4

Johnson v. Glick,
    481 F.2d 1028 (2nd Cir. 1973)…………………………………………….   2

Lee v. City of Los Angeles,
    250 F.3d 668 (9th Cir. 2001)……………………………………………...   6, 13

Manuel v. City of Joliet, Ill.,
    580 U.S. 357, 137 S. Ct. 911, 197 L.Ed.2d 312 (2017)………………………….   6, 8, 14

Martinez v. Santiago, Et al.,
    51 F.4th 258 (7th Cir. 2022)……………………………………………..   5, 12

Miller v. Prince George's Cnty., Md.,
    475 F.3d 621 (4th Cir. 2007)…………………………………………….   5

Powe v. City of Chicago,
    664 F.2d 639  (7th Cir. 1981)…………………………………………….   5, 12

Procunier v. Navarette,
    434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978)……………………………...   4

Rehberg v. Paulk,
    566 U.S. 356, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012) …………………………   14

Sanders v. English,
    950 F.2d 1152 (5th Cir. 1992)…………………………………………...   6, 7, 13

Sivard v. Pulaski Cnty.,
    959 F.2d 662  (7th Cir. 1992)……………………………………………   5, 12

Terrell v. Larson,
    396 F.3d 975 (8th Cir. 2005)), *cert. denied*, 141 S. Ct. 2800 (2021)…………….   2

Thompson v. Clark,
    592 U.S. ___, 141 S.Ct. 1682, 209 L.Ed.2d 263 (2021)………………………...   8, 15

Wallace v. Kato,
    549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)…………………………   14

Washington v. Housing Authority of the City of Columbia,
    2023 U.S. App. LEXIS 1296 (4th Cir. January 19, 2023)………………………   2

Wood v. Strickland,
    420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975..............................................   5

**STATUTES & RULES CITED:**

42 U.S.C. 1983…………………………………………………………………...   passim

F.R.A.P. 35 (b)………………………………………………………………….   1

F.R.A.P. 40 (b)………………………………………………………………….   1

F.R.C.P. 12 (b)………………………………………………………………..   6

**CONSTITUTION:**

U.S.C.A. 1st Amendment…………………………………………………….   15

U.S.C.A. 2nd Amendment…………………………………………………..   15

U.S.C.A. 3rd Amendment…………………………………………………..   15

U.S.C.A. 4th Amendment…………………………………………………..   passim

U.S.C.A. 5th Amendment…………………………………………………..   15

U.S.C.A. 6th Amendment…………………………………………………..   15

U.S.C.A. 7th Amendment…………………………………………………..   15

U.S.C.A. 8th Amendment…………………………………………………..   15

U.S.C.A. 9th Amendment…………………………………………………..   15

U.S.C.A. 10th Amendment…………………………………………………   15

U.S.C.A. 14th Amendment…………………………………….....................   passim

## INTRODUCTION

Plaintiff/Appellant, Andrew King, respectfully requests panel reahearing on his previous appeal before the Fourth Circuit and/or rehearing *en banc*. Specifically Appellant makes this request due to the finding of the Court that, "Because Appellant has not offered any facts which call into question the state court's probable cause determination, Appellant's argument that Officers Utt and Estep violated his constitutional rights is unavailing." (Page 5, Opinion of United States Court of Appeals 4th Circuit, January 19, 2023). In the undersigneds professional judgment, several of rehearing situations exist, which requires panel rehearing and/or rehearing *en banc*.

To the contrary Appellant has asserted repeatedly that Officers Utt and Estep were armed with actual knowledge of his innocence at the time they made this arrest. This knowledge undermines any iota of probable cause. The very notion that these officers could be permitted to make an arrest when fellow law enforcement agents told them that they were arresting the wrong guy is contrary to the United States Constitution and requires rehearing by panel or *en banc* court.

## STATEMENT REQUIRED BY RULE 35 (B) & 40(B)

Panel rehearing and/or rehearing e*n banc* is warranted because this case involves a question of exceptional importance. The question before this court is whether an arrest of an innocent individual is proper when it is based on an invalid warrant and the arresting

officers have knowledge of his innocence.  See Sanders v. Flatwoods, 1991 U.S.App. Lexis 12668 (6th Cir. 1981).  The officers in question deliberately ignored evidence of Appellant's innocence and had actual knowledge that they were arresting the wrong individual.

When a § 1983 claim is asserted the court must answer two questions: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city [or its employees] is responsible for that violation."  Washington v. Housing Authority of the City of Columbia, 2023 U.S. App. LEXIS 1296 (4th Cir. January 19, 2023) *citing* Covenant Media of S.C., L.L.C. v. City of N. Charleston, 493 F.3d 421, 436 (4th Cir. 2007) (*quoting* Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)).  To prove a violation of substantive-due-process rights the Appellant must show that a defendant's behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Dean ex rel. Harkness v. McKinney, 976 F.3d 407, 413 (4th Cir. 2020) (*quoting* Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005)), *cert. denied*, 141 S. Ct. 2800 (2021). To be conscience shocking, a defendant's behavior must lack "any reasonable justification in the service of a legitimate governmental objective." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Although "the measure of what is conscience shocking is no calibrated yard stick," it does "`poin[t] the way.'" Id. at 847 (*quoting* Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)). And to that end, the Supreme Court

2

has "described a `culpability spectrum' along which behavior may support a substantive due process claim." Dean, 976 F.3d at 414 (*quoting* Lewis, 523 U.S. at 848-49).

On one end of the spectrum is "conduct intended to injure [that is] in some way unjustifiable by any government interest." Lewis, 523 U.S. at 849. Such conduct most likely rises to the conscience-shocking level. Id. On the other end is "negligently inflicted harm [which] is categorically beneath the threshold of constitutional due process" conduct. Id.; see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 202 (1989) ("[T]he Fourteenth Amendment... does not transform every tort committed by a state actor into a constitutional violation.").   But conduct falling in between those two poles— deliberate-indifference conduct which is more than negligence but less than intentional harm—presents a closer call. "[D]eliberate indifference is `an intermediate level of culpability' that can, if proven, also establish a due process violation." Dean, 976 F.3d at 415 (*citing* Lewis, 523 U.S. at 848-49). Ultimately, the applicable standard of culpability for a substantive-due-process claim—either "intent to harm" or "deliberate indifference"—depends on "an exact analysis of [the] context and circumstances" of the case. Id. at 414; see also Lewis, 523 U.S. at 850 ("Rules of due process are not... subject to mechanical application in unfamiliar territory.").

An allegation "that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued" presents a claim for malicious prosecution under Section 1983.   Humbert v. Mayor &

3

City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017). To succeed on such a claim, "a plaintiff must show that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." Id.

Appellant has unequivocally presented grounds for this civil action which was subsequently dismissed by the district court under the improper application of Baker. Appellant has asserted the arresting officers had "actual knowledge" of "innocence" but proceeded to arrest or detain him regardless of their knowledge.

Baker involved an erroneous arrest due to an understandable problem of mistaken identity. This case goes beyond issues of mistaken identity as the officers were in possession of exculpatory evidence as to Mr. King's innocence. The warrant at issue was intended for Appellant's brother, and as such the arrest was not made in good faith.

These facts, evidence and knowledge, strip both officers of qualified immunity and probable cause, which requires the remand and reversal of the opinion of the district court. "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict" a defendant of a crime" Id. at 556. Appellant was never convicted and was finally released six days later even though the arresting agency knew of his innocence. The tribunal below committed grave error, and because of the exceptional importance of this matter, rehearing *en banc* is necessary. See Procunier v. Navarette, 434 U.S. 555, 561-62, 98 S.Ct. 855, 859-60, 55 L.Ed.2d 24 (1978) (a state

official "will not be shielded from [§ 1983] liability if he acts `with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith'" (*quoting* Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)); see also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).[1]

All of these facts coupled with evidence were clearly pled in the complaint filed in the district court, and subsequently raised on this current appeal.   This Honorable Court did not address the lower court's improper application of Baker to the facts and Appellant's citation and analysis under Gay v. Wall, 761 F. 2d 175 (4th Cir. 1985) and its progeny.

Other courts have reasoned that the Due Process Clause does not allow government officials to continue holding a detainee after learning that they lack authority to do so. Martinez v. Santiago, Et al., 51 F.4th 258 (7th Cir. 2022) *citing to* Sivard v. Pulaski Cnty., 959 F.2d 662, 668 (7th Cir. 1992); Powe v. City of Chicago, 664 F.2d 639, 643 (7th Cir. 1981). Utt and Estep understood that Appellant was not the correct individual sought

---

1  Law Enforcement 101 dictates that an unlawful arrest without the requisite probable cause is a clear violation of constitutional rights. Police Officers are deemed to know at least a very minimal concept or the basic fundamentals of criminal/constitutional law.  Ignorance, is therefore no excuse and, thus, establishes a "conscious disregard" without legitimate government objective.  Appellant is only required to show that an arresting officer "deliberately or with a reckless disregard for the truth made an unlawful arrest. *C.f.* Miller v. Prince George's Cnty., Md., 475 F.3d 621, 627-628 (4th Cir. 2007).

under the invalid warrant for his arrest that lacked any indicia of reliability or probable cause.[2]

To determine if an official has violated a detainee's due process rights, there is an application of a deliberate-indifference standard, which is the general standard applicable to claims arising under substantive due process. See Flores v. City of S. Bend, 997 F.3d 725, 730 (7th Cir. 2021); Armstrong v. Squadrito, 152 F.3d 564, 576 (7th Cir. 1998) (analyzing whether jailers were deliberately indifferent to detainee's prolonged detention caused by clerical error).[3] See, *e.g.*, Lee v. City of Los Angeles, 250 F.3d 668, 683-84 (9th Cir. 2001) (plaintiff stated claim for violation of due process by alleging that defendants acted with deliberate indifference when arresting and extraditing schizophrenic man without checking identity); Cannon v. Macon Cnty., 1 F.3d 1558, 1563 (11th Cir. 1993) (recognizing right to be free from "continued detention after it was or should have been known that the detainee was entitled to release."); Sanders v. English, 950 F.2d 1152, 1159,

---

2   Let it be noted that the arrest warrant was for a misdemeanor retail theft and not capital murder or some heinous felony.  Even so, to continue to arrest and detain Appellant under any charge by a warrant both Utt and Estep understood to be for another individual, namely, Appellant's brother, is clearly a deliberate and/or intentional violation of Appellant's civil rights with a conscious disregard stripping both officers of qualified immunity and probable cause.

3   Although the Coleman v. Frantz, 754 F.2d 719 (7th Cir. 1985) decision relied on Baker to conclude that this type of claim arises under the Due Process Clause of the Fourteenth Amendment, the Supreme Court more recently held that claims for unlawful pretrial detention generally arise under the Fourth Amendment, regardless of whether legal process has been initiated or a judicial officer has made a probable half cause determination. Manuel v. City of Joliet, Ill.. 580 U.S. 357, 137 S. Ct. 911, 918-19, 197 L.Ed.2d 312 (2017).  Appellant has asserted both a 4th and 14th Amendment Claim much greater than half cause determination. Appellant has also adduced sufficient evidence and facts without an opportunity for discovery to support any 4th and 14th Amendment constitutional claim here to pass muster of a motion to dismiss under F.R.C.P. 12 (b).

1162 (5th Cir. 1992) (no claim against police chief who was merely negligent in failing to investigate plaintiff's claim of innocence, but claim against a different officer who "deliberately looked the other way in the face of exonerative [sic] evidence indicating that he had arrested the wrong man.").  Notably, a few of these opinions are crafted or centered around this Honorable Court's decision in <u>Gay v. Wall</u>, 761 F.2d 175, 178 (4th Cir. 1985) (holding plaintiff stated a claim when he alleged that defendants continued to hold him despite "actual knowledge" that he was the wrong person).

None of the above-standards were applied by the lower court nor were they addressed by this Honorable Court.  Defendants investigated Mr. King's claims of innocence and the issuing authority of North Versailles, Pennsylvania, told Utt and Estep, that they had the "wrong guy"; however, the officers disregarded these "facts" and "evidence", resulting in what may only be coined as "deliberate indifference."

Not only has Appellant established a deliberate or intentional violation of his due process rights, but also "criminal recklessness" to those rights under both the 4th and 14th Amendments to the United States Constitution.  There was clearly a "conscious disregard" to what North Versailles Pennsylvania had told Officers Utt and Estep.

This Honorable Court should grant rehearing *en banc* to address the exceptional and important constitutional issues of this improper arrest and improper detention of the Appellant without requisite probable cause based on an invalid warrant for another

individual and actual knowledge of innocence from a **<u>reliable</u>** source i.e., North Versailles

Police Department, the issuing authority.

Moreover, to the extent that <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 184 (4th

Cir. 1996), is deemed to have controlled the panel decision here, *en banc* review, is

particularly important or appropriate for it will allow the full court to address the issues in

this case in light of the subsequent analysis by other circuit courts including the United

States Supreme Court under <u>Manuel v. City of Joliet</u>, 580 U.S. 357, 137 S. Ct. 911, 918-

19, 197 L.Ed.2d 312 (2017) and <u>Thompson v. Clark</u>, 592 U.S. ___, 141 S.Ct. 1682, 209

L.Ed.2d 263 (2021).  The unlawful arrest and/or detention of this Appellant by Officers

Utt and Estep was intentional, deliberate, unreasonable and rose to the level of criminal

recklessness. Further the arrest was not made in good faith and was without any reasonable

governmental objective. This case must be reversed and remanded to the district court for

entry of an appropriate order.

## **<u>BACKGROUND</u>**

On April 21, 2018, Appellant Andrew King (hereafter "Mr. King") was taken into

custody by Officer Jason K. Utt (hereafter "O. Utt") and Officer Friend Estep (hereafter

"O. Estep") of the New Martinsville Police Department based on an arrest warrant

erroneously issued in Allegheny County. **App. 4-38.** O. Utt and O. Estep knew that they

were arresting the wrong individual. **App. 4-38.**   This warrant was issued due to the

recklessly sloppy police work of the North Versailles Township in Allegheny County. **App. 4-38.**

Plaintiff was taken into custody based on a bench warrant for his brother, Alexander King, who had been previously arrested by Officer Vincent DiCenzo, III (hereafter "O. DiCenzo") of North Versailles Township in Pennsylvania. **App. 4-38.** Mr. King immediately stated to the O. Utt and O. Estep that he was not the correct individual being sought in Allegheny County and that in fact the correct individual was his twin brother, Alexander King. **App. 4-38.**

O. Utt stated that nonetheless he would need to take Mr. King into custody and that Mr. King, "had permission to kick his twin brother Alexander King's butt." **App. 4-38.** O. Utt and O. Estep proceeded to arrest Mr. King as he was the individual who was named in the warrant they were serving. **App. 4-38.** Because of recklessly sloppy police work in North Versailles, Allegheny County, Pennsylvania, Mr. King, was the victim of an unlawful police arrest and was taken into custody. **App. 4-38.** Mr. King was detained in jail for six (6) days. **App. 4-38 and App. 39-84.**

Mr. King spent approximately one evening at the New Martinsville Police Department and six (6) days at Northern Regional Correctional Facility based on deliberately indifferent conduct of Utt and Estep, which rose to the level of criminal recklessness upon information, which they received from the issuing authority in North Versailles, Pennsylvania. **App. 4-38** During his incarceration Mr. King routinely stated to

all officials and all Defendants that he was being wrongfully detained and incarcerated and that the correct party was his brother, Alexander King. **App. 4-38.**

Appellant did not appear to match any warrant identifiers including photographs; the physical descriptors were different; eye color is different; and, finally, the fingerprints did not match. **App. 4-38.**   New Martinsville, O. Utt. O. Estep and officials actively ignored findings of such an investigation. **App. 85-103.**

Rather than investigate or act upon these red flags, that Appellant was not the correct party and that he was being wrongfully held in connection with a warrant for another individual, the fact that the other individual was known to these officials, the fact that Appellant's family was making repeated phone-calls, the fact that North Versailles of Allegheny County, Pennsylvania indicated they were arresting the wrong guy, New Martinsville, Cecil, Utt and Estep, consciously disregarded these facts and this evidence. **App. 85-103.**   A quick investigation by any of these named individuals would have revealed that the wrong man was unlawfully being held in custody contrary to a legitimate or reasonable governmental objective. **App. 4-38 and 85-103.**

Additionally, it has been averred by DiCenzo in the concurrent case, which Appellant requests this Honorable Court take judicial notice that on or about April 20, 2018, Estep actually made preliminary investigation and finding of Appellant's innocence by contacting the issuing authority i.e., North Versailles Police Department, in North Versailles Township, Allegheny County, Pennsylvania. **App. 4-38.**

10

Based, in part, upon additional information provided by Estep, later that day…
DiCenzo informed Estep that they had arrested the wrong individual." **App. 4-38.** Estep
responded that they were going to incarcerate Appellant anyway at their County facility
due to the outstanding warrant". **App. 4-38.** Utt and Estep acted with deliberate
indifference, conscious disregard without a legitimate or reasonable governmental
objective in choosing to do so. **App. 4-38.** Even a cursory review of the probable cause
warrant, simple fingerprint or a review of a photo comparison would have revealed that
Appellant was the incorrect individual being unlawfully detained. **App. 4-38.** It should
have been readily apparent that Appellant was not the individual that was identified by the
warrant issued in North Versailles Township, Allegheny County, Pennsylvania. **App. 4-38.**

Despite being armed with this information, nothing was done to any reasonable
extent, nor a minimal investigation into Appellant's arrest was directly ignored and he was
forced to fend for himself in prison for six (6) days. **App. 4-38.** While in prison
Appellanbt faced threats of physical violence and rape, denial of essential medication and
extreme hardships. **App. 4-38.** Upon being released from Northern Regional these
officials and the officials from Pennsylvania failed to remove the warrant resulting in
further injuries and harms. **App. 4-38.**

On April 25, 2018, it was determined that Appellant was not the correct individual
and was being held in custody without probable cause. **App. 4-38.** There is no indication

in any records why this determination could not have been made earlier or why Appellant continued to be wrongfully arrested detained even after the issuing authority advised that they had the wrong guy (as if this investigation never took place). **App. 4-38.** There is a clear indication in the records showing that this determination was made earlier and the these officials failed to act immediately or acted with a deliberate indifference, with a conscious disregard lacking any legitimate or reasonable governmental objective. **App. 4-38.**

Plaintiff has a clearly established right under the 4th and 14th Amendments to the United States Constitution to be free from unreasonable searches or seizure of his person, a right that these officials consciously disregarded and violated by incarcerating Appellant contrary to the facts and evidence before them.

## **ARGUMENT**

### A.     The Panel Decision Is In Direct Conflict with the Decisions of this Circuit and of Other Circuits Courts as well as the United States Supreme Court.

The panel's unpublished memorandum decision is in direct conflict with the decisions in this Honorable Court, other circuit courts and the United States Supreme Court.

Other courts have reasoned that the due process clause does not allow government officials to continue holding a detainee after learning that they lack authority to do so. Martinez v. Santiago, Et al., 51 F.4th 258 (7th Cir. 2022) *citing to* Sivard v. Pulaski Cnty., 959 F.2d 662, 668 (7th Cir. 1992); Powe v. City of Chicago, 664 F.2d 639, 643 (7th Cir.

1981). Other circuits have also crafted rules requiring jailers to release detainees upon learning of the detainee's innocence. Id.

To determine if an official has violated a detainee's due process rights, there is an application of a deliberate-indifference standard, which is the general standard applicable to claims arising under substantive due process. See Flores v. City of S. Bend, 997 F.3d 725, 730 (7th Cir. 2021); Armstrong v. Squadrito, 152 F.3d 564, 576 (7th Cir. 1998) (analyzing whether jailers were deliberately indifferent to detainee's prolonged detention caused by clerical error). See, *e.g.*, Lee v. City of Los Angeles, 250 F.3d 668, 683-84 (9th Cir. 2001) (plaintiff stated claim for violation of due process by alleging that defendants acted with deliberate indifference when arresting and extraditing schizophrenic man without checking identity); Cannon v. Macon Cnty., 1 F.3d 1558, 1563 (11th Cir. 1993) (recognizing right to be free from "continued detention after it was or should have been known that the detainee was entitled to release."); Sanders v. English, 950 F.2d 1152, 1159, 1162 (5th Cir. 1992) (no claim against police chief who was merely negligent in failing to investigate plaintiff's claim of innocence, but claim against a different officer who "deliberately looked the other way in the face of exonerative [sic] evidence indicating that he had arrested the wrong man."); Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985) (plaintiff stated claim when he alleged that defendants continued to hold him despite "actual knowledge" that he was the wrong person).

13

The panel decision also conflicts with the United States Supreme Court decision, under <u>Manuel v. City of Joliet, Ill.</u>, 580 U.S. 357, 137 S. Ct. 911, 918-19, 197 L.Ed.2d 312 (2017). The arrest and detention of the Appellant was "not reasonable", rises to the level of "criminal recklessness" nor an arrest and detention made in "good faith" by virtue of Utt and Estep's "conscious disregard" to the status of the bad warrant.

Thus, given the clear conflict between the panel decision, the decisions of this court and the decisions of other circuit courts including the United States Supreme Court, petition for panel rehearing and/or rehearing *en banc* must be granted.

### B.   The Panel Decision Failed to Address the Critical Constitutional Question Raised nor the Application of <u>Baker</u> by the Lower Court.

In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts. <u>Manuel v. City of Joliet, Ill.</u>, 137 S. Ct. 911 (2017)(explaining that tort principles "provide the appropriate starting point" in specifying the conditions for recovery under § 1983); <u>Wallace v. Kato</u>, 549 U.S. 384, 388-390, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (same for accrual dates in particular). Sometimes, that review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. <u>See</u> Id.; <u>Heck v. Humphrey</u>, 512 U.S. 477, 483-487 (1994). Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving "more as a source of inspired examples than of prefabricated components." <u>Hartman v. Moore</u>, 547 U.S. 250, 258, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); <u>see</u> <u>Rehberg v. Paulk</u>, 566 U.S. 356, 366, 132 S.Ct.

1497, 182 L.Ed.2d 593 (2012) (noting that "§ 1983 is [not] simply a federalized amalgamation of preexisting common-law claims"). In applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue.

The constitutional rights at issue are to remain free of government intrusion via an unlawful seizure of their person without procedural or substantive due process of law, which is the epitome of the bill of rights. <u>See</u> United States Constitution Amendment: 1 through 10 & 14.  To maintain a Fourth Amendment claim under § 1983, a plaintiff such as Appellant must demonstrate, among other things, that he obtained a favorable termination of the underlying criminal prosecution. ***C.f.*** <u>Heck v. Humphrey</u>, 512 U.S. 477, 484, and n. 4, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Recently the Supreme Court of the United States Court granted *certiorari* to resolve a split among the circuit courts in <u>Thompson v. Clark</u>, 592 U.S. ___, 141 S.Ct. 1682, 209 L.Ed.2d 263 (2021)(holding that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.)

Here, we have a similar scenario with an additional indication of innocence from the inception of the arrest.  This Honorable Court declines to grant relief under the mask of <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 184 (4th Cir. 1996) claiming to wit:

"Appellant does not allege that Officers Utt and Estep had any involvement in obtaining the bench warrant…….[i]nstead, as Appellees point out, 'Officers Utt and Estep only got involved in the tail-end of the situation involving the Appellant as their first connection to this matter began only after the at-issue warrant was issued'."[4]

This analysis is flawed three-fold. First under the idea that Officers Utt and Estep were involved with the unlawful arrest without probable cause in the first place. Secondly, when the Officers Utt and Estep were told by the North Versailles Police Department of Pennsylvania (who issued the actual warrant in the first place) plainly and unequivocally that they had the wrong guy. It is not conceptually possible for probable cause to attach to a warrant when the issuing authority has stated that the individual being arrested is not the target of that warrant.

Finally, Officers Utt and Estep had a duty under the constitution to refrain from making any unlawful arrest with a lack of probable cause. Utt and Estep deliberately ignored that duty thereby arresting and detaining Appellant despite these unalienable facts and concrete evidence that he was not the target of the warrant in question.

Brooks does not control the outcome of this appeal which requires panel rehearing or rehearing _en banc,_ as well as, reversal and remand of the district court's opinion, which identified Baker as a controlling factor in denying Appellant his entitlement to the relief

---

[4] Clearly Utt and Estep were involved in effectuating the bench warrant otherwise no intentional or deliberate "unlawful arrest" would be at issue.

requested. The facts and evidence of this case establish Utt and Estep do not fall under the ambit or theory of qualified immunity.  Appellant has offered a plethora of facts concomitant with evidence calling into question the probable cause determination here, as probable cause did not exist once Utt and Estep were provided with information that they had the wrong guy.     Therefore, Utt and Estep's improper judgment resulted in the intentional or deliberate violation of Appellant's constitutional rights by persons acting under the color of state law with a "conscious disregard" when no "legitimate" or "reasonable" governmental objective existed.

## CONCLUSION

The Court should grant panel rehearing and/or rehearing *en banc* in this case as it would be contrary to the United States Constitution to allow law enforcement officials to arrest and detain an individual that they know is not the subject of an invalid warrant.

Respectfully submitted,

/s/ Louis J. Kroeck IV
Louis J. Kroeck IV, Esquire
LJK LAW, PLLC
1200 Sarah Street
Pittsburgh, PA 15203
Phone: 1 (412) 712-7605
Facsimile: (717) 787-1052
Email: Lou@ljk-law.com

Attorney for Appellant: ***Andrew King***.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellant respectfully requests oral argument because, in the Appellant's view, oral argument would be helpful to the Court in resolving the exceptionally important constitutional issues raised in this appeal that have serious implications far beyond the parties themselves.

Respectfully submitted:

<u>s Louis J. Kroeck IV</u>
Louis J. Kroeck IV, Esquire
Pa. I.D. # 210045
LJK LAW, PLLC
1200 Sarah Street
Pittsburgh, PA 15203
Phone: (412) 712-7605
Fax: (717) 820-1052
Email: Lou@ljk-law.com
Attorneys for Appellant: ***Andrew King.***

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.    This petition for rehearing complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or Fed. R. App. P. 32(a)(7)(B) because this petition contains 6,314 words, including the parts of the petition exempted by Fed. R. App. P. 32(a)(7)(B) (iii).

2.    This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman or similar typeface.

3.    This petition complies with the requirements of Fed. R. App. P. 35 (b) and 40 (b) in all other respects including page limitations.

Respectfully submitted:

/s/ Louis J. Kroeck IV
Louis J. Kroeck IV, Esquire
Pa. I.D. # 210045
LJK LAW, PLLC
1200 Sarah Street
Pittsburgh, PA 15203
Phone: (412) 712-7605
Fax: (717) 820-1052
Email: Lou@ljk-law.com
Attorneys for Appellant: *Andrew King.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies the foregoing document was served on all parties or their

counsel of record through the CM/ECF system if they are registered users.

Respectfully submitted:

<u>*s* Louis J. Kroeck IV</u>
Louis J. Kroeck IV, Esquire
Pa. I.D. # 210045
LJK LAW, PLLC
1200 Sarah Street
Pittsburgh, PA 15203
Phone: (412) 712-7605
Fax: (717) 820-1052
Email: Lou@ljk-law.com
Attorneys for Appellant: ***Andrew King.***